UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| AARON WILLIAMS, | ) |
| | ) |
| Movant, | ) |
| | ) |
| v. | ) No.  4:12 CV 00252 CDP |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**GOVERNMENT'S RESPONSE TO PETITIONER'S AMENDED MOTION UNDER
28 U.S.C. §2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

COMES NOW, the United States of America, by and through Richard G. Callahan,

United States Attorney for the Eastern District of Missouri, and Sirena M. Wissler, Assistant

United States Attorney for said District, and responds to petitioner Aaron Williams's Motion to

Vacate, Set Aside, or Correct Sentence, filed pursuant to Title 28, United States Code, Section

2255.

**STATEMENT OF RELEVANT FACTS[1]**

1.  On or about September 24, 2008, a duly empaneled Grand Jury sitting in the Eastern

District of Missouri returned an Indictment against Petitioner Aaron Williams (hereinafter, "Mr.

Williams") and three co-defendants, alleging a Conspiracy to Distribute and Possess With the

Intent to Distribute Heroin.

2.  Mr. Williams was arrested on the underlying criminal case on October 9, 2008.

---

[1]Unless otherwise noted, the facts are taken from the official Court docket maintained by
the Clerk of the Court, United States District Court for the Eastern District of Missouri, case
number 4:08CR 566 CDP (also referred to as the "underlying criminal case").

3.  Mr. Williams made his initial appearance on October 24, 2008 before United States Magistrate Judge Thomas C. Mummert.  Judge Mummert appointed attorney David A. Bruns to represent Mr. Williams.

4.  Mr. Bruns requested discovery from the Government, and moved for additional time in which to determine whether to file any pre-trial motions and, if so, what motions to file.

5.  On or about December 9, 2008, Mr. Williams met with attorney James M. Martin in St. Louis.  (Statement and Affidavit of James M. Martin, attached hereto as Government's Exhibit 1, paragraph 1).

6.  On December 9, 2008, Mr. Williams retained the services of James M. Martin. Pursuant to a written Contract of Employment, attorney Martin agreed to represent Mr. Williams in the underlying criminal case for the sum of $25,000.00. (Attorney Contract of Employment, Exhibit A to the Affidavit of James M. Martin).

7.  At the time he retained attorney Martin, Mr. Williams indicated that he had borrowed the funds with which to pay attorney Martin from his mother Rosie Williams, his sister Jennifer Williams, and his father James Gardner.  (Statement and Affidavit of James M. Martin, paragraph 1; Exhibit A to the Affidavit of James M. Martin).

8.  Shortly after he was retained, attorney Martin communicated with Mr. Williams by letter.  In a letter dated December 19, 2008, attorney Martin outlined his assessment of the case, including Mr. Williams's involvement in the case, potential defenses, and potential suppression issues.  Included with the letter was a copy of a proposed plea agreement offered by the Government.  (Exhibit B to the Statement an Affidavit of James M. Martin).

9.  Attorney Martin never received any funds whatsoever from Eugene Williams. (Statement and Affidavit of James M. Martin, paragraph 18).  Attorney Martin was never made

aware of any issues involving Eugene Williams, and he never consulted with Eugene Williams. (Statement an Affidavit of James M. Martin, paragraph 29).

10.  Mr. Williams never advised attorney Martin that he had been receiving heroin from Eugene Williams.  (Statement an Affidavit of James M. Martin, paragraph 3).

11.  Sometime after December 23, 2008, attorney Martin became aware that co-defendant Jane Holmes had made a statement indicating that Mr. Williams had been receiving heroin from Eugene Williams.  According to Jane Holmes, Mr. Williams and Eugene Williams are cousins. Jane Holmes claimed that she knew these things because Mr. Williams had told her.  (Statement and Affidavit of James M. Martin, paragraph 4).

12.  Mr. Williams denied that he had ever told Jane Holmes that he had been receiving heroin from Eugene Williams.  (Statement an Affidavit of James M. Martin, page 4).

13.  Mr. Williams never told attorney Martin that he wished to enter a plea agreement with the government. (Statement an Affidavit of James M. Martin, paragraph 4).  To the contrary, Mr. Williams specifically told attorney Martin that he wished to have a jury trial.  (Statement an Affidavit of James M. Martin, paragraphs 7, 26).

14.  Attorney Martin communicated frequently with Mr. Williams, sometimes multiple times in a single day.  (Statement an Affidavit of James M. Martin, paragraphs 5, 9, 16).

15.  Attorney Martin communicated every plea offer made by the Government to Mr. Williams.  (Statement an Affidavit of James M. Martin, paragraphs 6, 7, 8, 11, 12, 13).

16.  Attorney Martin discussed with Mr. Williams a variety of considerations, including, but not necessarily limited to: the possibility of a 20 year mandatory minimum sentence, and a possible range of punishment.  Attorney Martin advised his client that if he pled guilty, he would be a Base Offense Level 36 and would receive a three level reduction for a Total Offense Level

3

of 33.  Attorney Martin estimated that such a plea would result in a sentence of approximately 14 years.  (Statement an Affidavit of James M. Martin, paragraph 7).

17.  Attorney Martin discussed with Mr. Williams issues regarding his prior criminal history.  (Statement an Affidavit of James M. Martin, paragraphs 9, 10).

18.  After the Government indicated its intention to seek an enhancement pursuant to Title 21, United States Code, Section 851 in the event of trial, attorney Martin had multiple conversations with Mr. Williams regarding the impact of such an enhancement, specifically telling him that he would be risking a 20 year sentence, as opposed to 13 or 14 that he could receive after a plea.  (Statement an Affidavit of James M. Martin, paragraphs 11, 12).

19.  On January 7, 2009, attorney Martin sent a letter to Mr. Williams in which he gave his assessment of the Government's evidence, likely witnesses at trial, and their anticipated testimony.  (Exhibit D to Statement an Affidavit of James M. Martin).

20.  On February 11, 2009, attorney Martin sent a letter to his client in which he enclosed documents including a plea agreement offer extended by the Government.  The Government required that Mr. Williams accept the offer (or reject it) no later than February 17.   (Exhibit C to Statement an Affidavit of James M. Martin).

21.  On February 20, 2009, attorney Martin sent another letter to Mr. Williams in which he summarized certain telephone and in-person conversations, and outlined Mr. Williams's stated position with regard to a possible suppression issue.  The letter also summarized attorney Martin's suspicions about probable Government witnesses and their likely testimony at trial. Finally, the letter recalled telephone conversations of February 16 and 17, 2009, in which attorney Martin spoke with Mr. Williams regarding a possible plea.  The letter also included a

section entitled "Considerations for Plea," which outlined Mr. Williams's options as it pertained to a plea as opposed to a trial.

22. As late as April 29, 2009, the Government remained willing to entertain plea negotiations with Mr. Williams.  Attorney Martin once again communicated Mr. Williams's options, reiterating that he would be facing a 20 year mandatory sentence if the Government were to proceed under Section 851 and he were to be convicted.  (Statement an Affidavit of James M. Martin, paragraph 16).

23. On April 29, 2009, Mr. Williams rejected the Government's plea offer and informed attorney Martin that he wished to proceed to trial. (Statement an Affidavit of James M. Martin, paragraph 16).

24. Throughout his representation of Mr. Williams, attorney Martin advised Mr. Williams that he believed there was a strong likelihood that he would be convicted at trial. (Statement an Affidavit of James M. Martin, paragraph 19).

25. Mr. Williams indicated that if he could receive a sentence of 6-8 years, he might consider a plea.  (Statement an Affidavit of James M. Martin, paragraph 20).  However, the only offer extended by the Government would have resulted in a considerably higher sentence. (Statement an Affidavit of James M. Martin, paragraph 22).

## ARGUMENT

In order to state a cognizable claim of ineffective assistance of counsel, Mr. Williams must first establish that his counsel's performance was deficient and that the deficient performance prejudiced his defense.  Strickland v. Williams, 466 U.S. 668, 700 (1984).  As to each of his many claims, Mr. Williams must prove that (1) his lawyer's performance was constitutionally deficient and (2) that he suffered prejudice.   Mr. Williams bears the burden of

5

proving both constitutional deficiency and prejudice.  Patterson v. United States, 133 F. 3d 645, 647 (8th Cir. 1998).  It is well-settled that in order to establish ineffective assistance of counsel, a defendant "faces a heavy burden."  United States v. Alexander, 2009 WL 1421203, at *2 (E.D. Mo. May 20, 2009), *citing* United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996).

As to each claim, Mr. Williams must demonstrate not only that defense counsel made errors, but that those errors were so serious that counsel was no longer functioning as counsel, thereby depriving Mr. Williams of his Sixth Amendment right.  Strickland, 466 U.S. at 687. Counsel is entitled to the strong presumption that his conduct falls within the wide range of professionally reasonable assistance.  Nguyen v. United States, 114 F. 3d 699, 703-703 (8th Cir. 1997)(quoting Strickland, 466 U.S. at 689).  The conduct at issue must be evaluated with an eye toward the circumstances surrounding the decisions at the time they were made, not in hindsight. Strickland, 466 U.S. at 680.   However, even if Mr. Williams succeeds in demonstrating that counsel made errors of constitutional proportion, he still cannot prevail if he is unable to prove also that in the absence of those errors, the outcome of the proceeding at issue would have been different.  Id. at 697 (object of ineffective assistance claim is not to grade counsel's performance; "If it is easier to dispose of an ineffective assistance claim on the ground of lack of sufficient prejudice...that course should be followed").

### I.    Mr. Williams waived his right to assistance of counsel unhindered by conflict of interest

Mr. Williams first alleges that his conviction and sentence must be vacated because his trial attorney, James M. Martin, labored under a conflict of interest.  According to Mr. Williams, the conflict consisted of attorney Martin's having been paid by Eugene Williams - cousin to Mr. Williams - who was discovered to be Mr. William's source of supply for heroin.  Without

conceding the truth of any factual statement made by Mr. Williams in connection with this claim, it is abundantly clear that Mr. Williams has waived his right to make any claim of ineffective assistance of counsel in connection with the conflict of interest he now alleges.

Mr. Williams was charged by way of Indictment on September 24, 2008.  According to *his own affidavit*, "[I]mmediately after [his] arrest, [his] cousin, Eugene Williams retained James M. Martin, Esq. to represent [him] on the charges."  (Sworn Affidavit of Aaron Williams, attached to Amended Motion to Vacate Under Section 2255 as Exhibit 1, paragraph 2).  Attorney James M. Martin entered his appearance on behalf of Mr. Williams on December 11, 2008.   As the case progressed, co-defendant Jane Holmes allegedly gave information tending to establish that Mr. Williams had told her that his source of supply for heroin was Eugene Williams.  According to Mr. Williams, "[I]mmediately after [he] became aware of the declaration the subject (co-conspirator) made against [his] cousin, [he] told Mr. Martin [he] wished to resolve the case with a plea bargain and formulate [his] sentencing defense from this perspective."  (Sworn Affidavit of Aaron Williams, paragraph 5).  These two paragraphs, when taken together, demonstrate irrefutably that Mr. Williams was well aware of the potential conflict of interest issue in the very early stages of the case.  Nevertheless, Mr. Williams remained silent, never informing the Court of the existence of this issue.

Perhaps more incredibly, Mr. Williams continued to be represented by attorney Martin, despite his claim that attorney Martin "told [him] that if [he] insisted on asking [sic] a plea bargain, he will not represent [Mr. Williams]."   (Sworn Affidavit of Aaron Williams, paragraph 10).  According to Mr. Williams, "[B]ecause [his] cousin, Eugene Williams, was the one who paid the retainer fee, [Mr. Williams] was afraid that any further debates with Mr. Martin would have left [him] without a lawyer."  (Sworn Affidavit of Aaron Williams, paragraph 10).  As a

result, Mr. Williams claims, he "proceeded to trial in spite of [himself]."  (Sworn Affidavit of

Aaron Williams, paragraph 10).  At no time during the pendency of the underlying criminal case

did Mr. Williams ever bring this issue or any other issue of perceived "conflict of interest" to the

attention of the Court.  Mr. Williams does not so much as claim that he did.

In <u>United States v. Bonilla-Marquez</u>, 924 F. 2d 770 (8th Cir. 1991), the Eighth Circuit

Court of Appeals examined a case in which the defendant, Bonilla, "alleged that his retained trial

counsel, Rex Ryland, was a co-conspirator."  <u>Id.</u>  According to Bonilla, he was denied his Sixth

Amendment right to effective assistance of counsel when Ryland "refuse to allow [Bonilla] to

plea bargain for a lesser sentence out of fear that any agreement would have required Bonilla to

tell the government about his drug contacts, including Ryland."  <u>Id.</u> at 770-771.  Bonilla proceed

to trial with Ryland as his attorney, and following his conviction and the imposition of a ten-year

sentence, Bonilla filed a motion under Section 2255, seeking to vacate his conviction and

sentence.  In summarily rejecting Bonilla's ineffective assistance of counsel claim, the Eighth

Circuit Court wrote,

> Bonilla knowingly and voluntarily waived his right to assistance of
> counsel unhindered by a conflict of interest.  Bonilla had no right
> to conceal the conflict from the Court, later citing it as a
> justification for a new trial.  He knew exactly what he was doing
> and must abide by the consequences.

<u>Id.</u> (internal citations omitted).  Here, Mr. Williams engaged in the same conduct as did Bonilla.

If Mr. Williams's affidavit is to be believed, he was well aware *months prior to trial* that the

person who had paid his attorney's fees had been implicated as a co-conspirator.  And, according

to Mr. Williams, these facts played a substantial part in his decision not to seek a plea agreement

with the Government to resolve his case.  Like Bonilla, Mr. Williams had no right to conceal

this issue from the Court only to now rely upon it as grounds to vacate his conviction.  Like

Bonilla, Mr. Williams "knew exactly what he was doing" and he "must abide by the consequences."   In failing to bring this issue to the attention of the Court *prior to trial*, Mr. Williams knowingly and voluntarily waived his right to the assistance of counsel free from any conflict of interest.

**II.     Attorney Martin did not have a conflict of interest**

Even assuming, *arguendo*, that Mr. Williams did not waive his right to make a claim of ineffective assistance of counsel based upon an alleged conflict of interest, his claim fails.  The Government concedes that, if proven, the fact that attorney Martin was paid by an un-indicted co-conspirator *could* give rise to a conflict of interest.  However, it is incumbent upon Mr. Williams to demonstrate *both* the existence of the conflict and that the conflict caused him some prejudice.  Mr. Williams is unable to meet this heavy burden.

In United States v. Reed, 179 F. 3d 622, 624 (8th Cir. 1999), the United States Court of appeals for the Eighth Circuit was called upon ton examine a case in which a petitioner convicted of a drug case moved to vacate his sentencing, arguing that his attorney suffered from a conflict of interest because "both he and the Michigan-based 'boss' of the drug operation . . . were represented by [the same attorney] but had differing interests."  Before beginning its analysis, the Court reiterated that "[T]he Sixth Amendment right to counsel has been interpreted to provide for representation that is 'free from conflicts of interest or divided loyalty.'" Id.  (internal citations omitted).  It noted, however, that "join representation of multiple interested parties by a single attorney is not a per se violation of a defendant's right to effective assistance of counsel." Id.   Therefore, any conflict of interest - if one existed at all - was merely "potential" and not "actual."   Unless the petitioner meets his "the burden of showing that the conflict 'adversely affected the lawyer's performance,'" by "demonstrating that his counsel 'actively represented

9

conflicting interests,'" he cannot meet the threshold showing required for an ineffective

assistance of counsel claim.  And as the Eighth Circuit has noted, "an 'abstract or hypothetical'

set of 'what ifs' does not satisfy a defendant's burden in proving an actual conflict of interest."

Id.  (internal citations omitted).

The Government submits that this Court need not engage in speculation or conjecture as

to whether any conflict *might* have existed in the underlying criminal case.  Mr. Williams simply

fails to offer any factual support whatsoever for his assertion that his attorney, James M. Martin,

was paid by an un-indicted co-conspirator.  Save for his own self-serving affidavit, Mr. Williams

offers this Court no evidence that attorney Martin ever *met*, let alone accepted payment from,

Eugene Williams. To the contrary, attorney Martin has provided this Court with his affidavit *and*

*accompanying documents* demonstrating that he was retained and paid by Mr. Williams himself

with money he borrowed from his parents and sibling.  The Attorney Contract of Employment,

attached to the Statement and Affidavit of James M. Martin as Exhibit A was signed and dated

on December 9, 2008 - the very date on which Mr. Williams retained attorney Martin to represent

him.  Attorney Martin's handwritten notes on the bottom of that document reflect Mr. Williams's

representations that the money had been loaned to him by his mother, father, and sister.  Because

Mr. Williams has wholly failed to demonstrate that attorney Martin received payment from

Eugene Williams, he has not demonstrated that any actual conflict of interest existed.

### III.    Attorney Martin did not provide ineffective assistance of counsel in connection with his communication of the "Bruns offer"

Mr. Williams next suggests that he received constitutionally ineffective assistance of

counsel when attorney Martin recommended that he reject the "Bruns offer" made by the

Government in December 2008.  Once again, Mr. Williams bears the burden of demonstrating

*both* constitutionally deficient performance and prejudice.  And once again, Mr. Williams falls short.

It is difficult to ascertain whether Mr. Williams concedes that attorney Martin timely communicated the "Bruns offer."   In his affidavit, Mr. Williams claims that when he "inquired about the plea offer, [he] was out on bail." (Sworn Affidavit of Aaron Williams, paragraph 7). Mr. Williams further claims in his affidavit that he "asked [his] lawyer to mail me the plea offer, but he did not." (Sworn Affidavit of Aaron Williams, paragraph 8).  However, in his Amended Motion to Vacate, Mr. Williams admits that on December 19, 2008, attorney Martin sent him a letter outlining the terms of a plea agreement proposed by the Government.[2]  The letter specifically notes that attorney Martin had "received a copy of a proposed Plea Agreement, containing guidelines, recommendations and stipulations, a copy of which is enclosed for [Mr. Williams's] review." (Petitioner's Exhibit C, page 1).  Attorney Martin advised Mr. Williams that the proposed plea agreement had been "sent to Dave Bruns about the time [attorney Martin] entered [his] appearance." (Petitioner's Exhibit C, page 1).  Clearly, Mr. Williams received a copy of the "Bruns offer" from attorney Martin.

 In the December 19, 2008 letter, attorney Martin correctly noted that the plea offer contemplated a Total Offense Level of 33.  Mr. Williams does not deny having received the letter or the copy of the plea agreement.  That agreement clearly provides that Mr. Williams's criminal history score would be determined by the Probation Office, and that "[P]rior convictions can affect the sentence and usually result in a harsher sentence." (Petitioner's Exhibit B, page 9).

---

[2] Mr. Williams has characterized this as the "Bruns offer," presumably because it was first made at the time Mr. Williams was represented by attorney David Bruns.  This plea offer is attached to Mr. Williams's Amended Motion to Vacate as Exhibit B.  The cover letter written by attorney Martin is attached to the Amended Motion to Vacate as Exhibit C.

The proposed plea agreement also clearly provides that "defendant's criminal history is known to the defendant, who also acknowledges having had an opportunity to consult the preliminary Pretrial Services Report regarding the defendant's criminal history."  (Petitioner's Exhibit B, page 9).   Perhaps most importantly, the proposed plea agreement specifically notes that "absent applicability of the safety valve provisions, the crime to which a guilty plea is being entered requires a mandatory minimum term of imprisonment of at least ten years."[3]  (Petitioner's Exhibit B, page 14).  Therefore, Mr. Williams's claim that he was unaware of the ten year mandatory minimum sentence is specious at best.

Clearly, attorney Martin communicated to Mr. Williams the terms of the "Bruns offer" as he is required to do by law.  *See*, Missouri v. Frye, 132 S. Ct. 1399, 1408 (2012) (defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused).  Mr. Williams claims, however, that attorney Martin provided constitutionally ineffective assistance when he recommended that Mr. Williams reject the offer and proceed to trial.  *See*, Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012) (defendants have a Sixth Amendment right to counsel that extends to the plea-bargaining process).  However, once again, with the exception of his own self-serving affidavit, Mr. Williams offers no support for this contention.  Certainly, attorney Martin's letter dated December 19, 2008 cannot be fairly read to contain *any* recommendation whatsoever as to whether or not Mr. Williams should accept the plea bargain.  Rather, it contains a review of the proposed Guidelines applications, along with a potential strategy for negotiating the drug quantity.  Attorney Martin also advised Mr. Williams that if he were to accept the Government's

---

[3] This language is underlined in the copy attached as Petitioner's Exhibit B.  It is unknown whether attorney Martin underlined that sentence, or whether Petitioner did so.

offer, if he had only one prior conviction, his sentencing range would be 135-168 months (11-14 years) and if he had two prior convictions, his sentencing range would be 151-188 months. (Petitioner's Exhibit C, page 3).  It also contains a summary of attorney Martin's evaluation of who the Government might call as witnesses, and what those witnesses might say about Mr. Williams.  Conspicuously absent from the letter is any recommendation as to whether or not Mr. Williams should accept the offer.

### IV.    Attorney Martin communicated a subsequent offer to Mr. Williams in February 2009

Mr. Williams next claims that attorney Martin provided him constitutionally ineffective assistance of counsel when he failed to communicate a subsequent plea offer, made in February 2009.  However, once again, Mr. Williams fails to meet his burden of proving both constitutionally ineffective assistance and prejudice.  Attached hereto as Exhibit C to the Statement and Affidavit of James M. Martin is a copy of a letter, dated February 10, 2009, from attorney Martin to Mr. Williams.  It is not entirely clear, but Mr. Williams apparently claims that he did not actually receive the February 10, 2009 letter until sometime after he had been convicted at trial.  It bears mentioning, however, that the letter was sent to the same address as had the letter submitted as Petitioner's Exhibit C - an address to which Mr. Williams had presumably been released at the time he was admitted to bond.

The February 10, 2009 letter accompanied certain enclosures, which are also included herewith as part of Exhibit C to the Statement and Affidavit of James M. Martin.  Among the enclosures was a cover letter from Assistant United States Attorney Tiffany G. Becker, the prosecutor in the underlying criminal case.  The February 10, 2009 letter clearly advises Mr. Williams that he should find "enclosed the documents we received today from the Assistant U.S.

Attorney regarding a plea agreement."  (Petitioner's Exhibit E).  Although Mr. Williams now

claims that attorney Martin did not communicate the February 2009 plea offer, the Statement and

Affidavit of James M. Martin reveals otherwise.  Therefore, Mr. Williams did not receive

constitutionally ineffective assistance of counsel in connection with the February 2009 offer.[4]

> **V.**      **Even if attorney Martin had provided constitutionally ineffective assistance of counsel by failing to seek a plea agreement after the Government filed a Criminal Information pursuant to Title 18, United States Code, Section 851, Mr. Williams cannot demonstrate prejudice**

The Government in no way concedes that attorney Martin provided constitutionally

ineffective assistance of counsel in failing to pursue a plea agreement after the Government filed

a Criminal Information pursuant to Title 18, United States Code, Section 851.  However, the

Eighth Circuit Court of appeals has repeatedly instructed that,  "[I]f it is easier to dispose of an

ineffective assistance claim on the ground of lack of sufficient prejudice...that course should be

followed."  Strickland, 466 U.S. at 697.   This Court should summarily dispose of Mr.

Williams's claim regarding a post-Section 851 notice plea agreement because Mr. Williams

cannot demonstrate prejudice.

In order to demonstrate prejudice in connection with the pre-trial negotiation process, Mr.

Williams must "show the outcome of the plea process would have been different with competent

advice."  Lafler, 132 S. Ct. at 1384.   However, as the Supreme Court has duly noted,

"defendants have 'no right to be offered a plea ... nor a federal right that the judge accept it.'"  Id.

at 1387.  In Lafler, the Supreme Court noted that "[I] a plea bargain has been offered, a defendant

---

[4]It is also worth noting that Mr. Williams now claims that he "repeatedly contacted his trial counsel about pleading and offering to cooperate," he does not suggest that he ever requested a meeting with the assigned Assistant United States Attorney, or the Court, to convey his concerns regarding trial counsel's performance and/or lack of communication.  Certainly, Mr. Williams never advised the Court of his desire to enter a plea.

has the right to effective assistance of counsel in considering whether to accept it." Id. at 1387. However, the Court took caution to distinguish those cases in which a defendant had been offered a plea bargain but rejected from cases in which no plea offer had been made.  More specifically, the Court noted, "[I]f no plea offer is made, or a plea deal is accepted by the defendant but rejected by the judge, the issue raised here simply does not arise." Id.

In the instant case, the Government made a plea offer to Mr. Williams in December 2008 (the "Bruns offer").  Mr. Williams rejected that offer.  The Government then made a virtually identical offer in February 2009.  Mr. Williams again did not accept.  Then, the Government filed a Criminal Information pursuant to Section 851 mere days before trial.   Thereafter, no further plea offers were extended.  And, crucially, Mr. Williams is unable to offer this Court any evidence or indication that the Government *would have* made him a plea offer had attorney Martin requested one.  Therefore, he is unable to demonstrate prejudice in connection with any alleged deficient performance in connection with attorney Martin's failure to seek a negotiated settlement after the Government filed the Section 851 notice.

### VI.    Many of Mr. Williams's claims are foreclosed

Each of Mr. Williams's remaining claims were or *should have been* raised on direct appeal.  It is well-settled that "[a] petitioner simply cannot raise a non-constitutional or nonjurisdictional issue in a §2255 motion if the issue could have been raised on direct appeal but was not." United States v. Anderson, 25 F. 3d 704, 706 (8th Cir. 1994).  "'Normally, a collateral attack should not be entertained if defendant failed, for no good reason, to use another available avenue of relief.'" Reid v. United States, 976 F. 2d 446, 447 (8th Cir. 1992).   The United States Supreme Court has "long and consistently held that a collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982); Cardarella v. United States, 351 F.

2d 443, 447 (8th Cir. 1965) ("'It is firmly established that the remedy provided by Title 28

U.S.C.A. §2255 cannot be used to serve the functions and purposes of an appeal.'") The United

States Court of Appeals for the Eighth Circuit has specifically instructed that "[n]either the

sufficiency of an indictment nor the sufficiency of the proof to sustain a conviction may be raised

by a §2255 motion." Id.

Mr. Williams, through his present counsel John Thomas Moran, Jr., filed a direct appeal.

Among the issues raised were: the Constitutionality of the search of Mr. Williams's vehicle at the

time of a traffic stop, including the issue of whether police had probable cause to arrest Mr.

Williams; and whether Mr. Williams's prior felony conviction from the State of Illinois

constituted a "final" conviction for purposes of application of Section 851.  Argument **F** in Mr.

Williams's Amended Motion to Vacate was not among the issues raised on appeal.  Yet

certainly, Mr. Williams, through his current counsel, could have raised that issue.  Argument **G**

in the Amended Motion to Vacate was raised on appeal, and was rejected by the Court of

Appeals.  Mr. Williams fails to elucidate the issue of how attorney Martin provide ineffective

assistance of counsel by failing to raise an issue that was raised and rejected by the Court of

Appeals. And he fails to establish that attorney Martin would have succeeded in defeating the

Section 851 enhancement even if he had raised the issue.

As to Mr. Williams's Argument **H**, once again his claim is not properly included herein.

"As a general rule, 'improper jury instructions are not cognizable in a §2255 proceeding,"

because a §2255 proceeding is not a substitute for direct appeal."  Catches v. United States, 582

F. 2d 453, 459  FN11 (8th Cir. 1978).  Only when the disputed instruction is "of constitutional

magnitude or 'inherently results in a complete miscarriage of justice'" is collateral relief

available.  Id.  Remarkably, Mr. Williams now raises the issue of a jury instruction permitting the

jury to convict Mr. Williams of a lesser-included offense, despite *never raising this issue on direct appeal.*

While it is true that trial counsel did not specifically object to the instruction at the time of trial, the issue could nevertheless have been raised on appeal.  Certainly, the Court of Appeals would have examined the issue under a less rigorous "plain error" standard.   This Court of Appeals has held that it "will not ordinarily consider an issue not raised before the trial court unless a clear miscarriage of justice would result."  United States v. Eddy, 660 F.2d 381, 383 (8th Cir. 1981).  See also United States v. Barrera, 562 F.3d 899, 901 (8th Cir. 2009) (failure to object waives the issue and defendant may not raise it "unless he can demonstrate plain error resulting in miscarriage of justice.")

Because Mr. Williams should have raised the issue presented in Arguments **F** and **H** on direct appeal, and because he did raise the issue presented in Argument **G** on appeal, only to have the Court of Appeals reject it, Mr. Williams is foreclosed from raising those issues herein.

**VII.   The Eighth Circuit Court of appeals was aware of the <u>Carachuri-Rosendo v. Holder</u> and  <u>Garbutt v. Holder</u> cases at the time it decided Mr. Williams's direct appeal**

Mr. Williams next claims that his conviction and sentence must be vacated because of various Supreme Court and/or Eighth Circuit Court of Appeals decisions which he claims "overruled" the Eighth Circuit's opinion on his direct appeal.  Specifically, Mr. Williams alleges that his conviction and sentence must be vacated because of the Supreme Court's decisions in Carachuri-Rosendo v. Holder, 130 S. Ct. 2577 (2010)  and United States v. Haltiwanger, which he asserts abrogate the Eighth Circuit's ruling on Mr. Williams's direct appeal.[5]   Remarkably,

_____

[5]Mr. Williams also relies upon Garbutt v. Holder, 130 S. Ct. 3460 (2010), which he acknowledges was decided on June 21, 2010.

however, the Carachuri-Rosendo case upon which Mr. Williams now relies was decided *before* Mr. Williams's appeal was decided. As Mr. Williams concedes, the Carachuri-Rosendo case was decided by the Supreme Court on June 14, 2010. Mr. Williams's appeal was not submitted by the parties until the following day, June 15, 2010. While certainly, appellate counsel's failure to notify the Court of Appeals of the Supreme Court's holding in Carachuri-Rosendo is understandable, less so is counsel's failure to notify the Eighth Circuit Court thereafter. The opinion affirming Mr. William's conviction was filed by the Eighth Circuit Court on August 5, 2010 - nearly 60 days *after* Carachuri-Rosendo. It strains credulity to believe that the Eighth Circuit Court of Appeals was not aware of Carachuri-Rosendo at the time it decided Mr. Williams's appeal.

After Mr. Williams's direct appeal was denied, he filed a Petition for Certiorari to the United States Supreme Court. The Petition was filed on January 24, 2011 and docketed on January 26, 2011. Mr. Williams does not inform this Court as to what issues he raised in the Petition for Certiorari, but whatever those issues, they were rejected by the Supreme Court, which filed a letter denying the Petition on February 25, 2011. In order to prevail, Mr. Williams bears the burden to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Because Carachuri-Rosendo and the other cases upon which he now relies were decided *before* Mr. Williams's direct appeal, he is unable to demonstrate that the outcome of his sentencing proceeding or his appeal would have been different.[6] In light of these circumstances,

---

[6]Certainly one could not reasonably argue that attorney Martin provided ineffective assistance of counsel by failing to raise the Carachuri-Rosendo case as grounds to deny the Section 851 enhancement sought by the Government, inasmuch as Carachuri-Rosendo was not decided until *after* Mr. Williams had been tried, convicted, and sentenced on August 25, 2009.

Mr. Williams is wholly unable to establish that he suffered any prejudice and is therefore not entitled to relief.

**VIII**.   **Mr. Williams is not entitled to re-litigate his direct appeal**

Mr. William's next asserted grounds for relief is found at Section III of his Amended Motion to Vacate.  There, he urges this Court to vacate his conviction and sentence, asserting that the Government's filing of the Criminal Information pursuant to Title 18, United States Code, Section 851 "rendered his sentence unconstitutional."   In so doing, he relies upon United States v. O'Brien, 130 S. Ct. 2169 (2010), which he kindly attaches to his Amended Motion to Vacate as Exhibit O.   Commendably, Mr. Williams readily acknowledges that the Eighth Circuit Court of Appeals was well aware of the O'Brien decision at the time it decided Mr. Williams's direct appeal, noting that it was "raised by petitioner's appellate counsel at oral argument on June 15, 2010."  Mr. William's concern appears to be the fact that "the Eight Circuit's opinion made no reference to the *O'Brien* holding," prompting counsel to brief the issue in a Petition for Rehearing.  The Eighth Circuit Court of Appeals - now urged a *second time* to consider O'Brien - denied the Petition for Rehearing.  Mr. Williams then filed his Petition for Certiorari, which was also denied.

It appears that by raising the O'Brien case once again his Amended Motion to Vacate, Mr. Williams simply seeks to re-litigate his direct appeal.  As previously noted, "a collateral challenge may not do service for an appeal."  Frady, 456 U.S. at 165.   Mr. Williams raised this issue on direct appeal, and again in his Petition for Rehearing.  Presumably, he raised it a third time in his Petition for Certiorari.  All three times, the argument was rejected.  Mr. Williams offers this Court nothing in the way of support for the proposition that he is entitled to have the issue revisited a fourth time.  And certainly, it is virtually inconceivable that, in light of the three

previous rejections of this issue, that attorney Martin could have been constitutionally ineffective for raising it.  As a practical matter, attorney Martin could not have raised the issue, inasmuch as O'Brien was not decided until *after* Mr. Williams had been tried, convicted, and sentenced.

### IX.    Mr. Williams could have - but did not - raise the issue regarding the expert testimony of Salvador Cira on direct appeal

Mr. Williams's last claim for relief sees him assert that his conviction and sentence must be vacated because the expert testimony at trial of Salvador Cira constituted hearsay and violated the Confrontation Clause.  This argument, found at Section IV of Mr. Williams's Amended Motion to Vacate, asserts that the Supreme Court's ruling in Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009) supports the notion that Mr. Cira should not have been permitted to testify. Once again, however, Mr. Williams has chosen an improper forum.  Certainly this argument could have been, and perhaps should have been, raised on direct appeal.  He is foreclosed from raising it herein.

Attorney Martin did, at the time of trial, object to the testimony of Salvador Cira. (Transcript of Trial, Volume III, pages 45-47, attached hereto as Government's Exhibit 2). Attorney Martin specifically cited to Crawford as grounds for his objection.  This Court admonished the Government to avoid creating Confrontation Clause violations by tailoring Mr. Cira's testimony accordingly.  The Court noted attorney Martin's objection, stating "I understand you object."  (Transcript of Trial, Volume III, page 45, line 17).  Obviously, the objection was preserved for appeal and could easily have been raised in that context.  This Court should not suffer to permit Mr. Williams to raise this issue now, and in this forum, nearly three years after trial.

20

**X.      Mr. Williams is not entitled to a hearing**

Ordinarily, Mr. Williamswould be entitled to a hearing on his Amended Motion to Vacate.  However, where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," no such hearing is required.  28 U.S.C. §2255.  "No hearing is required where the claim 'is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.'"  Watson v. United States, 493 F. 3d 960, 963 (8th Cir. 2007).  In the instant case, the record and documents included herewith affirmatively refute each of Mr. Williams's factual assertions.  In some instances, Mr. Williams is unable to demonstrate that he suffered any prejudice as a result of any of the allegedly deficient performance on the part of his trial counsel.  In still other instances, Mr. Williams's claims are not properly before the Court because they could have, and perhaps should have, been raised on direct appeal.

### CONCLUSION

Based upon the foregoing, the government respectfully requests that Petitioner Aaron Williams's Amended Motion to Vacate, Set Aside, or Correct Sentence be denied.

                              Respectfully submitted,

                              RICHARD G. CALLAHAN
                              UNITED STATES ATTORNEY


                               /s/ Sirena M. Wissler
                              SIRENA M. WISSLER #55374MO
                              Assistant United States Attorney
                              111 South 10th Street, 20th Floor
                              St. Louis, MO 63102
                              (314) 539-7670

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 24, 2012, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

John Thomas Moran, Jr.
Attorney at Law
(Attorney for petitioner Williams).

  /s/ Sirena M. Wissler                    
SIRENA M. WISSLER #55374MO
Assistant United States Attorney